

Tagged Opinion

**ORDERED in the Southern District of Florida on March 18, 2008.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

MMH AUTOMOTIVE GROUP, LLC,

      Debtor.

_____/

SOUTH MOTOR COMPANY OF DADE
COUNTY, a Florida corporation,

      Plaintiff,

vs.

CARTER-PRITCHETT-HODGES, INC., a
Florida corporation,

      Defendant.

_____/

Case No. 05-40913-BKC-LMI
Chapter 7

Adv. No. 07-01574-LMI

### AMENDED MEMORANDUM OPINION IN SUPPORT
### <u>OF FINAL JUDGMENT IN FAVOR OF PLAINTIFF</u>[1]

This adversary proceeding, filed by South Motor Company of Dade County ("South Motor"), the purchaser of real property in a bankruptcy sale, seeks a determination that an unrecorded billboard lease, of which South Motor did not have actual notice, was eliminated as

---

[1] Amended to correct a scrivener's error on page 30 and to add a clarifying footnote on page 34.

an interest upon entry of the order approving the bankruptcy sale.  The Defendant lessee, Carter-Pritchett-Hudges, Inc. ("CPH"), disagrees.  For the reasons stated below, judgment will be entered against CPH and in favor of South Motor. [2]

## PROCEDURAL HISTORY

MMH Automotive Group, LLC ("MMH") filed a chapter 7 petition on September 25, 2005.  Pursuant to the settlement of an adversary proceeding more fully described below, the Trustee obtained title to real property located in Miami-Dade County, 18010 South Dixie Highway (the "Real Property"), which at one time had belonged to MMH.  This Court granted the chapter 7 trustee (the "Trustee") authority to sell the Real Property by auction in accordance with 11 U.S.C. §363, and subsequently it was sold to South Motor.  Pursuant to the sale order entered on March 15, 2007 (the "Sale Order") (Bankr. CP #209),[3] South Motor purchased the Real Property free and clear of all liens and encumbrances.

Following the sale, South Motor instituted the instant adversary proceeding, seeking a determination that the Sale Order conveyed the Real Property to South Motor free and clear of any interest in the Real Property asserted by CPH by virtue of an unrecorded lease.  Cross-motions for summary judgment were filed by South Motor and CPH, both of which were denied.[4] This matter then proceeded to trial on November 13, 2007.

## SUMMARY OF DISPUTE

South Motor seeks to enforce the Sale Order provisions that authorized the Trustee to sell the Real Property to South Motor free and clear of all liens and encumbrances, and enjoined third

---

[2] This opinion constitutes my findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. A separate final judgment will be entered consistent with this opinion.

[3] Record cites to the main bankruptcy case will appear as (Bankr. CP #__).

[4] South Motor filed its Motion for Summary Judgment (CP #7) before CPH had filed an answer.  CPH then filed a Motion to Dismiss (CP #15) and Response to Plaintiff's Motion for Summary Judgment (CP #24), which I chose to treat as a cross-motion for summary judgment.

parties from "asserting against South Motor, its successors or assigns, its property, or the Real Property, such persons' or entities' interests."  Sale Order at ¶6.  South Motor also asks this Court to find CPH has no interest in the Real Property because CPH's leasehold interest was not recorded and therefore is unenforceable against the Trustee and South Motor, a bona fide purchaser.  Moreover, South Motor argues, because CPH's leasehold interest was not recorded, CPH was not entitled to receive notice of the sale of the Real Property.  South Motor further asserts that even if CPH had been entitled to notice, the Real Property could nonetheless be sold free of CPH's interest pursuant to 11 U.S.C. §363(f).  South Motor's final argument is that since the Sale Order was a final order, not appealed, the whole world, including CPH, is bound by its provisions.

CPH counters that it does have an enforceable interest in the Real Property, that it was entitled to notice of the sale, and, moreover, that its interests cannot be compromised by section 363(f).  CPH claims it has an inalienable right in the Real Property by virtue of section 365(h), and therefore, the Sale Order is invalid as to its interests in the Real Property.

## FACTUAL SUMMARY

On April 19, 1999, CPH, a Florida corporation engaged in the business of outdoor advertising, entered into an Outdoor Advertising Ground Lease Agreement (the "Billboard Lease") with RGA Investment Inc. ("RGA"), a predecessor-in-interest to MMH. The Billboard Lease gave CPH the right to operate a billboard on the Real Property for a period of 99 years, for a single, up-front payment of $15,000. Along with the Billboard Lease, RGA executed a sale agreement with CPH in which RGA sold the billboard to CPH for ten dollars. [CPH Exh. #B]. CPH did not record the Billboard Lease, nor did it seek a permit for the billboard. CPH asserts

that the billboard did not need a permit because it was erected before Miami-Dade County required permits for billboards. [Trans. 171:12-18, 198:1-25].

CPH apparently operated the billboard for the next few years, during which time the Real Property was sold several times. In 2002, RGA sold the Real Property to MMH and executed a Warranty Deed (the "RGA Deed") recorded December 30, 2002 in the public records of Miami-Dade County. [CPH Exh. # I]. The RGA Deed conveyed the Real Property subject to, as stated on the face of the RGA Deed, taxes, conditions and easements of record, certain environmental matters and

> The Ninety-nine (99) Year Outdoor Advertising Ground Lease Agreement Dated April 21, 1999 for the lease term commencing April 16, 1999, said lease made between RGA Investments, Inc., a Florida corporation, and Carter-Pritchett Hodges, Inc., a Florida corporation.

MMH and RGA entered into an Assignment and Assumption Agreement of Outdoor Advertising Ground Lease Agreement on or about December 19, 2002. [CPH Exh. #LL]. There is no question that CPH knew MMH purchased the Real Property as MMH sent CPH a letter on December 30, 2002, asking for certain proof of insurance and requesting certain arrangements for, and payment of, utility charges associated with the electricity used to operate the billboard. [CPH Exh. #F].

In 2005, MMH transferred the Real Property to an allegedly affiliated company, GAG Realty, Inc. ("GAG"), by quitclaim deed (the "MMH Deed"),[5] while also transferring the car dealership located on the Real Property to an affiliate of GAG, Global Automotive Sales ("Global"). The MMH Deed did not mention the Billboard Lease; nor is there any evidence GAG assumed the Billboard Lease.

---

[5] A copy of the MMH Deed is attached as Exhibit B to the Amended Complaint filed by the Trustee in the Avoidance Adversary, defined *infra*.

MMH filed for relief under chapter 7 of the Bankruptcy Code on September 25, 2005. The Billboard Lease was not scheduled as an executory contract of the Debtor. The Trustee did not move to assume or reject the Billboard Lease.

Joel Tabas (the "Trustee"), was appointed chapter 7 trustee on September 27, 2005. On December 29, 2005, the Trustee filed an action against Global (the "Avoidance Adversary") seeking recovery of the automobile dealership assets,[6] which complaint was amended on February 2, 2006, adding GAG as a party and adding a count seeking recovery of the Real Property. The basis for the relief sought by the Trustee was that the transfers of the dealership and the Real Property were fraudulent transfers recoverable pursuant to 11 U.S.C. §§548 and 550. The parties ultimately settled the Avoidance Adversary, and pursuant to the settlement, GAG transferred the Real Property to the Trustee by quitclaim deed (the "GAG Deed"). The GAG Deed apparently did not reference the Billboard Lease.[7]

Although no bankruptcy pleadings referenced the billboard or the Billboard Lease, the Trustee had actual knowledge of both. In connection with the Avoidance Adversary the Trustee's counsel took the deposition of Ralph Sam, principal of GAG and Global, where, in response to a question by Trustee's counsel, Mr. Sam confirmed the billboard was owned by a third party named "Carter." [CPH Exh. #G, at 151:20-153:4]. Moreover, an exhibit to Mr. Sam's deposition, the Purchase and Sale Agreement between MMH and GAG, specifically recites in an addendum that "the billboard on the property is not owned by the seller, and is owned by a third party." [CPH Exh. #G].

---

[6] Adv. Proc. No. 05-06196-BKC-LMI.
[7] The GAG Deed was not introduced into evidence at trial, however according to the settlement approved by me, and the Final Judgment I entered in the Avoidance Adversary, GAG executed a quitclaim deed returning the Real Property to MMH.

Counsel for the Trustee also took the deposition of Abram Katz.  Exhibits from that deposition included the RGA Deed and the Billboard Lease. [CPH Exh. #H].  Additionally, a copy of the Billboard Lease was produced to the Trustee as part of a document production that requested "All documents regarding billboard." [CPH Exh. #B and JJ].

Once the Trustee had title, he began marketing the Real Property.  On February 14, 2007, the Trustee filed a motion seeking authority to sell the Real Property to SAG Realty, LLC free and clear of liens and encumbrances (the "Motion to Sell") (Bankr. CP #201).  The Motion to Sell was granted, and on March 12, 2007, I conducted an auction, at the conclusion of which, and based on the Trustee's recommendation, I found South Motor's bid of $6,835,000 to be the highest and best offer for the Real Property.   On March 15, 2007, I entered the Sale Order approving the sale to South Motor free and clear of all claims, liens and encumbrances.  I made certain findings in the Sale Order, based on the factual proffers of the Trustee, including that "[p]roper, timely, adequate and sufficient notice of the Motion … has been provided in accordance with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004" and that "[a] reasonable opportunity to object or to be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities."  Sale Order, Exh. C and D.  *See* Trans. of hearing on Motion to Sell, 21:24-22:8 [SM Exh. #24].  The closing took place on March 19, 2007.[8] [SM Exh. #1, at ¶30].

South Motor asserts it first became aware of a possible third party interest in the billboard when, in July 2007, CPH employees arrived and commenced painting the billboard's pole. [SM Exh. #1, at ¶33]. Through counsel, South Motor contacted CPH, identified itself as the current owner of the Real Property, and demanded CPH remove the billboard. Prior to the demand, CPH

---

[8] There was some argument relating to the Trustee's delivery of an affidavit at closing attesting that, to his knowledge, there were no other parties in possession.  Since South Motor did not rely on this affidavit to bid, and the Trustee was not obligated to deliver the affidavit at closing, I view this fact as irrelevant.

claims it had no formal notice[9] of MMH's bankruptcy or notice of the sale of the Real Property. [Pretrial Order (CP #49), at ¶1C].

## JURISDICTION

While neither party disputes my jurisdiction, I nonetheless must determine whether I have jurisdiction of this dispute since the Real Property is no longer part of the bankruptcy estate. *See In re Edwards*, 962 F.2d 641 (7th Cir. 1992). While the sale of assets under 11 U.S.C. §363 is final as to the entire world, including those who were not parties to the sale, *Gekas v. Pipin* (*In re Met-L-Wood Corp.*), 861 F.2d 1012, 1017 (7th Cir. 1998); *In re Clinton St. Food Corp.*, 254 B.R. 523, 531 (Bankr. S.D.N.Y. 2000), and therefore, after a valid sale of assets, the bankruptcy court loses jurisdiction over the assets, *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990), the bankruptcy court nonetheless always retains jurisdiction to consider the enforceability of its own orders, including reconsideration of a sale to determine if it was properly conducted. *Doolittle v. County of Santa Cruz (In re Metzger)*, 346 B.R. 806, 819 (Bankr. N.D. Cal. 2006); *Cummings Prop., LLC v. Heidelberg Print Fin. Am., Inc.*, No. 01-11027, 2002 WL 1839252, at *4 (D. Mass. Aug. 12, 2002).

Because the issues presented relate to the validity and enforceability of my Sale Order, I have jurisdiction to determine whether all or part of the Sale Order is void or invalid and, if so, what relief is appropriate.

## REVIEW OF THE SALE ORDER IS PROPERLY BEFORE THE COURT

South Motor suggests that, because CPH has not sought review of the Sale Order pursuant to Fed. R. Civ. P. 60, made applicable to this adversary proceeding pursuant to Fed. R.

---

[9] I am not sure what significance there is in the qualifier "formal." No evidence was presented at trial that CPH had any notice of the bankruptcy although South Motor suggested that when the dealership shut down, CPH should have made inquiries.

Bankr. P. 9024 (hereafter "Rule 60"), CPH is not entitled to relief from the Sale Order. However, it was South Motor, not CPH, who initiated this review of the Sale Order.

South Motor filed a two-count adversary proceeding, seeking, *inter alia*, a determination by this Court that "CPH has no interest, leasehold or otherwise in the Real Property," and asking the court to enforce "the permanent injunction set forth in paragraph 6 of the Sale Order against CPH." CPH, in its Answer and Affirmative Defenses (CP #41), asserts that South Motor's "claims are barred because [CPH's] due process rights were violated by entry of the Sale Order."

In the absence of an appeal of a final sale order, the only manner in which a sale order may be challenged is through Rule 60(b). *See In re Met-L-Wood,* 861 F.2d 1012; *In re Edwards*, 962 F.2d 641; *Schipper v. Fulton State Bank (In re Schipper)*, 109 B.R. 832, 834 (Bankr. N.D. Ill. 1989). Rule 60 provides:

> **(b)  Grounds for Relief from a Final Judgment, Order, or Proceeding.**
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>> (4) the judgment is void;
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>> (6) any other reason that justifies relief.
>> …
> **(d)  Other Powers to Grant Relief.**  This rule does not limit a court's power to:
>> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
>> (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or
>> (3) set aside a judgment for fraud on the court.

In the instant case, I am unable to determine whether South Motor is entitled to the relief requested in this adversary proceeding without addressing the due process concerns raised by CPH. CPH contends that it was entitled to receive notice of the proposed sale of the Real Property, that since it did not receive notice of the sale, its due process rights were violated, and consequently, the Sale Order is not enforceable against it. Whether I treat these concerns as having been raised under Rule 60 or in an independent action filed by South Motor, I find it is appropriate under the procedural posture of this proceeding to review the validity of the Sale Order.

Moreover, pursuant to Fed. R. Civ. P. 8(c)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008:

> If a party mistakenly designates a defense as a counterclaim or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated and may impose terms for doing so.

I find that, in light of the relief requested by South Motor, justice requires I treat CPH's defense as a counterclaim and therefore CPH is entitled to review of the Sale Order pursuant to Rule 60.

In the context of reviewing whether an order or judgment should be set aside, it is appropriate to consider whether the party against whom the order or judgment was entered received proper notice of the relief sought, even if the relief sought was *in rem*. *See In re Edwards,* 962 F.2d 641*; In re Metzger,* 346 B.R. 806. The right to actual notice of *in rem* proceedings is explicitly recognized in Rule 60 by its reference to 28 U.S.C. §1655.[10] This statute creates a procedure for service on absent defendants in quiet title actions brought in district court. Rule 60 expressly recognizes that failure to provide an absent defendant with

---

[10] 28 U.S.C. §1655(a) provides "In an action in a district court to enforce any lien upon or claim to, or to remove any encumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant can not be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain."

actual notice gives that defendant a right to seek to set aside a judgment, at least within a certain time period.  Thus, if CPH successfully demonstrated it was entitled to receive notice of the Motion to Sell, then the Trustee's failure to provide CPH with notice does constitute an appropriate basis under Rule 60 to reconsider the Sale Order.

<strong>CPH WAS ENTITLED TO RECEIVE NOTICE OF THE SALE</strong>

The Bankruptcy Code authorizes a trustee to sell property of the estate "after notice and a hearing."  11 U.S.C. §363(b)(1). Section 102(1)(a) of the Bankruptcy Code defines this phrase as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances ...." Fed. R. Bankr. P. 6004(a) provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business, shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k) ...." Fed. R. Bankr. P. 6004(c) requires that any motion seeking "authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold."  Rule 9014, in turn, directs that any relief to which the rule applies will be requested by motion "and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."

The law is clear that an entity that holds or asserts an interest in a property the trustee seeks to sell is entitled to receive notice of the trustee's intent to sell that property, particularly when the trustee seeks to sell the property free and clear of that entity's interest. *Mancuso v. The Meadowbrook Mall Co. (In re Rest. Assoc.)*, No. 1:06CU53, 2007 WL 951849, at *10 (N.D. W.Va. 2007); *In re Metzger*, 346 B.R. 806. *Cf. Cont'l Cas. Co. v. Gen. Dev. Corp. (In re Gen. Dev. Corp.),* 165 B.R. 685, 688 (S.D. Fla. 1994) ("It is well established that creditors' rights in bankruptcy cases are property interests that are protected by the Fifth Amendment and that

- 10 -

cannot be impaired without notice and an opportunity to be heard.").  However, a party whose interest is hidden, whether by design or failure to do what is necessary to protect or disclose such interest, cannot complain that its interest has been compromised without notice, because, logically, the trustee cannot be expected to know that a 'hidden' interest exists.  *See Wood v. CLC Corp. (In re CLC Corp.)*, 110 B.R. 335 (Bankr. M.D. Tenn. 1990) (creditor who did not file a claim or provide any notice to debtor of its interest in a property was not entitled to receive notice of a sale in accordance with 11 U.S.C. §363 or Fed. R. Bankr. P. 6004(a) or 2002(a)).

South Motor argues that CPH was not entitled to notice of the sale under Florida law because the Billboard Lease was for a term longer than one year and was not recorded.  South Motor cites to Florida Statute §695.01(1), which provides:

> No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law[.]

CPH counters that, although the Billboard Lease was not recorded, the Trustee and South Motor had constructive notice of the Billboard Lease because it is expressly described in the RGA Deed.  Moreover, CPH argues that the Trustee had actual notice of CPH's interest because the Trustee had a copy of the Billboard Lease, and was told of its existence in at least two depositions.  Finally, CPH contends the Trustee and South Motors were on inquiry notice because the billboard was located on the Real Property.

While the Trustee's actual notice of the Billboard Lease is not relevant to his ability to set aside CPH's interest under 11 U.S.C. §544(a), the Trustee cannot disregard an interest of which he has actual notice when seeking relief that will impact that interest.  Indeed, the Trustee acknowledged in his deposition that, had he known CPH was asserting an interest in the Real

Property, he would have provided notice to CPH of the Motion to Sell. [CPH Exh. #EE, at 27:15-17].

The Trustee's counsel, Gary Freedman, who had taken the depositions of Mr. Sam and Mr. Katz, testified at his deposition that he had no recollection of the testimony or documents relating to the billboard or the Billboard Lease. [CPH Exh. #FF].  While I do not dispute the truth of Mr. Freedman's testimony, the billboard was not an inconspicuous or inconsequential item on the Real Property. The billboard's existence was clearly known to, and a concern of, the Trustee and his employees;[11] the recovery and sale of the Real Property should have triggered some memory.  The fact that the sale apparently did not trigger the Trustee's memory does not change the fact that he did have actual notice of CPH's interest, avoidable or not, and therefore the Bankruptcy Code and Bankruptcy Rules require that CPH should have received notice of the proposed sale.[12]

South Motor claims alternatively that the Sale Order is binding on CPH and all other parties because it is a final order, regardless of whether CPH received notice or was entitled to receive notice.  South Motor contends that the Sale Order is an *in rem* order, which specifically conveys legal rights to the Real Property free and clear of all claims and interests, and since the Sale Order was never appealed, it is binding on all parties, even those who were not parties to the process. To accept South Motor's argument would be to acknowledge that, without exception, a person's property rights can be compromised with no notice and no attempt at notice of such

---

[11] The Trustee had an appraisal that mentioned the billboard on the property which appraisal the Trustee acknowledged reading. [CPH Exh. #EE, at 6:7-7:17; CPH Exh. #FF at 12:14-13:23].

[12] If the Trustee did not have actual notice I would need to address here whether he had constructive or implied actual notice, which might have triggered the same notice obligations as actual notice.  However, the Trustee did, in fact, have actual notice of the Billboard Lease, even though he and his staff apparently forgot.  The fact that the depositions were long, or there were many documents produced, does not "erase" the actual notice, especially when, as here, the depositions and documents related to the very property that was ultimately sold, the depositions were conducted within six months and a year prior to the sale, and the litigation in which the discovery took place had only recently been resolved.

compromise, so long as a moving party is successful in getting a final judgment.  First, this argument ignores Rule 60 and the relief available thereunder.  Second, I have previously rejected this argument in my Order Denying Summary Judgment, and I reject it again here.  Such reasoning flies in the face of the Due Process clause of the United States Constitution: "No person … shall … be deprived of life, liberty or property, without due process of law …" U.S. Const. Amend. V.  Due process includes the right to notice when life, liberty or property rights may be affected.

> An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  There is a distinction between recognizing the finality of orders as against the world, and recognizing that the finality of some orders is not absolute in the face of procedural flaws.

Since CPH did not receive the notice to which it was entitled, I must decide what is the consequence of that procedural flaw to finality and enforceability of the Sale Order.[13]

**THE EFFECT OF NOTICE DEFECTS ON THE FINALITY OF THE SALE ORDER**

The consequence of the failure to give notice of a sale free and clear of an interest or property right to a party who was entitled to such notice has been dealt with in three general approaches by the courts that have addressed this issue.

Under the first approach, any sale that purports to transfer estate property free and clear of a right, claim or interest without notice to the holder of the property of that interest is void and

---

[13] In their respective depositions, the Trustee and his counsel suggested that, because the sale was "as is, where is" it was incumbent upon South Motor to determine whether there were any adverse interests in the course of its due diligence.  The fact that South Motor assumed the risk of facts that due diligence may or may not have disclosed does not excuse the Trustee's express obligation under the Bankruptcy Code and Bankruptcy Rules to properly notice all parties in interest, or render irrelevant the Trustee's inaccurate, albeit unintentionally inaccurate, factual proffer regarding adequate notice at the hearing on the Sale Motion.

the sale must be rescinded.  *See Citicorp Mtg., Inc. v. Brooks (In re Ex-Cel Concrete Co.)*, 178 B.R. 198, 205 (B.A.P. 9th Cir. 1995) ("[W]e conclude that the lack of any notice to Citicorp constituted constitutional lack of due process which could not confer *in personam* jurisdiction on the bankruptcy court to adjudicate Citicorp's property rights.  This was *per se* a jurisdictional defect sufficient to result in a void order.").[14]  Neither South Motor nor CPH advocates this view.

Other courts follow a second approach and have held that a sale order with a notice defect is only invalid against the party who did not receive notice.  *See In re Rest. Assocs.*, 2007 WL 951849, at *10 (the court could enter an order that does not affect the actual sale of the property but nonetheless hold that the sale was not free and clear of use covenants where the beneficiary of the covenants did not get notice of the sale).  This is the approach that CPH would like me to follow.

The third line of cases seeks to fashion an equitable remedy by balancing the rights of the party whose interests have been compromised without notice, with the rights of a purchaser who relied on the selling party, the trustee or debtor-in-possession, to properly notify all parties in interest and who relied on a final order confirming the sale free and clear of all liens, claims and interests.  In *In re Edwards*, 962 F.2d 641, the court rejected the Rule 60 challenge to an order authorizing the sale of property free and clear of liens, including the liens of a mortgagee who never received notice of the sale.  Noting that "[t]he law balances the competing interests [of a purchaser against a lienholder who did not receive notice], but weights the balance heavily in favor of the bona fide purchaser," *id.* at 643, the court held that the mortgage holder was not entitled to relief from the judgment.  While the crux of the court's holding was that the rights of a

---

[14]*But see In re Met-L-Wood*, 861 F.2d at 1018 (While the court recognized that a sale that fails to comply with the notice requirements of the Bankruptcy Code and Bankruptcy Rules is invalid, "and may be set aside on appeal" it is not void, and a motion seeking to set aside the sale more than two years after the sale would be denied.  To hold otherwise would disregard the importance of finality of bankruptcy sales.).

bona fide purchaser, and the finality of bankruptcy sales, are paramount, the court also noted the mortgagee knew about the bankruptcy, did nothing to liquidate its interest for two years, waited three and a half months after it learned of the sale to seek to set aside the sale (which was eighteen months after the sale), and probably got as much relief as it might have received had it received notice.  In conclusion, the court stated "neither do we think that [the mortgagee] has displayed such diligence and zeal in the matter as to cause us to question the benefits of having a strict rule in favor of the bona fide purchaser at the bankruptcy sale." *Id.* at 645-646.

The interested parties who did not receive notice fared better in other cases where the court found the trustee or debtor failed to comply with the Bankruptcy Code or Bankruptcy Rules.  In *In re Metzger*, 346 B.R. 806, the bankruptcy court reviewed the enforceability of an order authorizing a sale free and clear of restrictions imposed by a participation agreement.  The County of Santa Cruz, which had issued the participation agreement in connection with the property sold, did not receive notice of the 363 sale.  The county filed for relief outside the one year period under Rule 60 and argued it would have objected to the sale had it received notice. The court held that because the county did not receive notice, the court had no jurisdiction over the county's interest and thus, there was a "per se jurisdictional defect in the Order." *Id.* at 816. The court further held that the county's challenge was not time barred because "a void judgment cannot acquire validity because of laches." *Id.*  The court also noted the purchaser was not a bona fide purchaser because the purchaser had actual notice of the Participation Agreement. However, notwithstanding the court's finding that the sale order was void, the court stated it "has some flexibility in creating a remedy here and need not and will not find the entire sale void on these facts." *Id.* at 819.  Consequently, the court held the sale was void only as to the county and the county's interest.

Similarly, in *In re Polycel Liquidation, Inc.*, No. 00-62780(RTL), 2006 WL 4452982 (Bankr. D.N.J. Apr. 18, 2006), the bankruptcy court rejected the holding in *Edwards*, following instead those cases that held due process rights take precedence "over the interest of finality in bankruptcy sales." *Id.* at *10.  Nonetheless, the court stated that "rather than simply setting aside the transaction, this court chooses to adhere to the approaches of those courts in considering due process violations of §363(b) that have 'fashioned remedies based upon the unique factual matrices underlying the respective controversies.'" *Id.* at *11 (citation omitted).  The court ruled that the appropriate remedy was to void only the portion of the sale order that violated the interested party's due process rights.

I believe that this third approach is the appropriate manner in which to resolve this problem.  There is no question that confidence in the finality of bankruptcy sales is of critical importance, and there are only limited circumstances in which a bankruptcy sale should be set aside.  *Golfland Entm't Ctr., Inc. v. Peak Inv., Inc. (In re: BCD Corp.)*, 119 F.3d 852 (10th Cir. 1997);  *Cedar Island Builders, Inc. v. S. County Sand & Gravel Co.*, 151 B.R. 298, 302 (D.R.I. 1993) ("[C]onfirmed sales may be vacated only when compelling equities outweigh the interest in finality.").  *See In re WPRV-TV,* 983 F.2d 336 (1st Cir. 1993).  Thus, the law directs the bankruptcy court, indisputably a court of equity, to weigh the facts in fashioning a remedy rather than dictating a hard and fast rule based on a final, but flawed, sale order.

I do not believe the circumstances in this case warrant voiding the entire sale.  Indeed, at this point it would be difficult, if not impossible, to undo what has taken place since the sale, including a significant distribution to unsecured creditors.  Thus, while leaving the sale intact, I must determine what remedy, if any, equity dictates CPH and South Motor are entitled to under the facts and circumstances of this case.  *See* 11 U.S.C. §105.  *Accord* Fed. R. Civ. P. 60

(authorizing relief on "motion and just terms").  Any resolution must weigh and balance the rights of two relatively innocent parties in the face of the dilemma created by the Trustee's failure to provide proper notice of the sale to CPH.[15]

## THE "CONFLICT" BETWEEN SECTIONS 363 AND 365

To decide what is the proper remedy, I must determine what would have been the result if CPH had both received notice of, and objected to, the sale. CPH has acknowledged it is not seeking greater rights than it would have been entitled to had it received notice. [Trans. Summ. J. Hearing (CP #54), at 50:20-51:7].[16]  Thus, it is necessary to begin by resolving whether the Trustee would have the right to sell the Real Property free and clear of the interests of CPH in accordance with 11 U.S.C. §363(f).

The first issue I must address is whether section 363(f) can ever apply to the sale of property subject to a lease, or whether, as CPH argues, I can only look to the provisions of section 365(h).  Assuming that I find section 363(f) does apply to the sale of real property that is

---

[15]I consider each party "relatively innocent" rather than totally innocent since each bears some responsibility for the predicament in which they now find themselves.  CPH bears some responsibility because not only did it fail to record the Billboard Lease, it also failed to maintain the billboard.  In fact, the billboard was in such a state of disrepair, South Motor fairly assumed the billboard was another neglected part of the Debtor's property. [SM Exh. #1, at ¶27]. Moreover, the billboard was subject to a tear down notice because it was not permitted.  Indeed one could infer that CPH's failure to maintain the billboard for at least several months, both prior to and following the sale, would suggest CPH had abandoned its interest.  Thus, while the name "Carter" was on the billboard [SM Exh. #1, at ¶34] the name alone, given the state of disrepair of the property and of the billboard, was not sufficient to provide notice to South Motor of CPH's interest.  I find of no import the fact that at one point, four years before South Motor purchased the property, South Motor, a corporation with over 100 employees, rented a billboard from CPH.  However, South Motor bears some responsibility because even though it clearly knew the billboard was on the Real Property [SM Exh. #1, at ¶26], and notwithstanding the billboard's state of disrepair, South Motor should at least have asked the Trustee and his counsel to confirm the billboard was the Debtor's property.

[16] I will address the objective legal result rather than the subjective result (that is, what South Motor would have done if it had known of the Billboard Lease or what CPH would have done if it had received notice of the sale).  CPH provided some testimony that it might have sought to purchase the property, which it claims to have done in the past in order to preserve a billboard location. [CPH Exh. #BB, at ¶4].  However, the testimony in support of this statement was highly speculative, and unsupported by any competent evidence, and therefore, I do not consider it relevant.  South Motor provided inconsistent, and therefore, inconclusive, testimony regarding what it would have done.  [Compare SM Exh. #1, at ¶31, with Trans. 63:2-21].  Moreover, the egg cannot be unscrambled, and so, in resolving this matter equitably, what either party might have done is not relevant to the determination of what can or should be done now.

subject to a lease, I must then determine whether, under this section, the Trustee had the authority to sell the Real Property free and clear of the Billboard Lease.

Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property of the estate free and clear of certain claims, liens and interests, subject to certain conditions and limitations. Section 365 of the Bankruptcy Code dictates the requirements pursuant to which a trustee may assume, assume and assign, or reject executory contracts and unexpired leases. While there does not appear to be a dispute that a leasehold interest is an interest for purposes of  section 363(f), the dispute is the manner in which, and under what procedure, that interest can be compromised. *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003) ("*Qualitech*"); *In re Haskell L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005); *In re Taylor*, 198 B.R. 142 (Bankr. D.S.C. 1996).

There is a division in the bankruptcy courts regarding the interrelationship, if any, between section 363(f) and section 365(h) with respect to the transfer of property free and clear of leasehold interests. There are cases that hold the more specific provisions of section 365(h) dictate the manner and procedure by which a debtor may terminate its interests in a lease; those specific provisions, rather than the more general provisions of section 363(f), must be followed. *See, e.g., In re Haskell L.P.*, 321 B.R. 1; *In re Taylor*, 198 B.R. 142. Conversely, other courts have held that statutory construction dictates the two sections must be read in concert and that, notwithstanding section 365(h), a debtor may sell a property free and clear of a leasehold interest if one of the conditions of section 363(f) can be satisfied. *See Qualitech*, 327 F.3d 537; *Hill v. MKBS Holdings, LLC* (*In re Hill)*, 307 B.R. 821 (Bankr. W.D. Pa. 2004).

In the instant case CPH claims that its rights in the Real Property have been statutorily guaranteed by section 365(h), which provides that, upon rejection of a lease in which the debtor

is lessor, the non-debtor party has the option to retain its possessory leasehold interest.[17]  CPH

contends that, because the Trustee did not assume the Billboard Lease within 60 days, the

Billboard Lease was deemed rejected.   Since, according to CPH, the Billboard Lease was

deemed rejected, CPH argues its possessory interests remain inviolate and the Trustee could not

use section 363(f) to dispossess CPH of its leasehold rights.   CPH incorrectly assumes the

Billboard Lease had been rejected at the time of the sale.   There is no "deemed rejection" of a

non-residential lease when the debtor is the lessor.[18]   Nonetheless, whether the Billboard Lease

had been rejected does not impact resolution of the issue. Indeed, in each of the cases cited by

CPH, neither assumption nor rejection of the lease had yet occurred.

　　　South Motor relies on the *Qualitech* decision in which the Seventh Circuit held that rules

of statutory construction require sections 363(f) and 365(h) to be read so that each statute is

given full effect, if possible.   The Seventh Circuit concluded that a property subject to a

---

[17] Section 365(h)(1) provides:

　　　(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—

　　　　　(i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

　　　　　(ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

　　　(B) If the lessee retains its rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

[18] *Collier's* suggests this may be an unintentional omission.  *See* 3 Collier on Bankruptcy ¶365.04[5] (15th ed. rev.).

leasehold may be transferred free of the leasehold interest, if one of the conditions of section 363(f) can be satisfied.

> [I]t is apparent that the two statutory provisions [11 U.S.C. §363(f) and 11 U.S.C. §365(h)] can be construed in a way that does not disable section 363(f) vis á vis leasehold interests. Where estate property under lease is to be sold, section 363 permits the sale to occur free and clear of a lessee's possessory interest – provided that the lessee (upon request) is granted adequate protection for its interest. Where the property is not sold, and the debtor remains in possession thereof, but chooses to reject the lease, section 365(h) comes into play and the lessee retains the right to possess the property. So understood, both provisions may be given full effect without coming into conflict with one another and without disregarding the rights of lessees.

327 F.3d at 548.

*Qualitech* is the only circuit decision that addresses the impact of section 363(f) and section 365(h) on each other. While some lower courts have found that property subject to a lease may be sold free and clear of the lease pursuant to section 363(f), *see, e.g., Cheslock-Bakker & Assoc. v. Kremer (In re Downtown Athletic Club of New York City, Inc.)*, No. M-47, 2000 WL 744126 (S.D.N.Y. June 9, 2000) (a debtor-landlord can sell property free and clear of a lease in bona fide dispute; rejecting *In re Taylor)*; *In re Hill*, 307 B.R. 821 (adopting the reasoning of *Qualitech*); *In re Bedford Square Assoc.*, 247 B.R. 140 (Bankr. E.D. Pa. 2000) (debtor-landlord could sell a portion of its property free and clear of restrictions in an unrecorded lease, which lease was therefore in bona fide dispute), the vast majority of lower court decisions that have addressed this issue have held that a debtor cannot use the provisions of section 363(f) to get around the rights of tenants expressly preserved by Congress in section 365(h).

> If the court were to grant the Debtor's Sale motion [seeking to sell property free and clear of a tenant's interest], the provisions of §365(h) would be eviscerated. In other words, the Debtor would be doing indirectly what it could not do directly, namely, dispossessing [the tenant].

*In re Haskell*, 321 B.R. at 9.

In *In re Churchill Prop. III, L.P.*, 197 B.R. 283 (Bankr. N.D. Ill. 1996), the court rejected the application of section 363(f) to a debtor's attempt to sell an apartment building free and clear of a washing machine lease.  The court, citing principles of statutory interpretation that "the specific prevails over the general," held "[s]ince Congress decided that lessees have the option to remain in possession, it would make little sense to permit a general provision, such as section 363(f), to override its purpose." *Id.* at 288.

In the case *In re Taylor,* 198 B.R. 142, after determining the leases in question were not in bona fide dispute, the court reviewed the legislative history of section 363 and determined that the rights of a tenant to retain possession in the face of a lease rejection are paramount, and held that section 365 provides the sole avenue for transfer of property subject of a leasehold interest.

*Haskell, Churchill Properties* and *Taylor* all relied, in part, on the case *LHD Realty Corp. v. Metro. Life Ins. Co.*, *(In re LHD Realty Corp.)*, 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982), in which case the court held that section 365 was "the exclusive remedy available to a debtor in an executory lease situation."  However, that statement must be read in the context of the distinct facts before the court in *LHD Realty*.  In *LHD Realty* the debtor asked the court, based on 11 U.S.C. §105 and the doctrine of commercial impracticability, to allow the debtor to terminate or modify an under-market lease encumbering property the debtor did not intend to sell.  The court noted that the express provisions of section 365 gave the debtor-landlord two options – rejection, in which case the tenant could stay in possession, or assumption, which assumption did not include non-consensual modification of the assumed lease. The court held it was not free to look at equitable doctrines such as commercial impracticability to provide the debtor with options not provided by the Bankruptcy Code. The holding of *LHD Realty* had nothing to do with the sale or

transfer of property or the resolution of the meaning of more than one statute section, and its holding is inapplicable to the issue before me.

Moreover, each of these cases has failed to recognize two fundamental premises.  First is the rule of statutory construction, dictated by the United States Supreme Court, and followed by the Seventh Circuit in *Qualitech,* that "courts shall interpret statutes when possible so as to avoid conflicts between them if such construction is possible and reasonable." 327 F.3d at 544.

> [W]e "are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).  We should read federal statutes "to give effect to each if we can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981) …
>
> * * *
>
> [S]ee also *Securities Indus. Ass'n. v. Board of Governors of Federal Reserve Sys.,* 468 U.S. 137, 176, 104 S.Ct. 2979, 3000, 82 L.Ed.2d 107 (1984) (O'Connor, J., dissenting) (construing one portion of federal law to implicitly repeal or override another "is a last resort, … and must be avoided when an interpretation of the statutory language is available that is consistent with legislative intent and that shows the conflict to be merely apparent and not real").

*Id.*

Second is the rule that statutes should be interpreted as written unless the results are absurd.  *Accord Miedma v. Maytag Corp.*, 450 F.3d 1322, 1326 (11th Cir. 2006) *(quoting Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997)).  To adopt the absolute test approach suggested by these lower court cases and by CPH would actually lead to an absurd result – elevating tenants of rejected leases, without exception, to a protected status they might not enjoy in the absence of rejection, and do so at the expense of other creditors of the estate.

An underlying premise of the *Qualitech* decision is the Seventh Circuit's statement that there is nothing in section 363(f) that suggests its provisions are subject to those of section 365(h).

> [N]owhere in either section 363(f) or section 356(h) [sic] is there a cross-reference indicating that the broad right to sell estate property free of "any interest" is subordinate to the protections that section 365(h) accords to lessees. The omission suggests that Congress did not intend for the latter section to limit the former.

327 F.3d at 547. In an article harshly critical of the *Qualitech* decision, Michael St. Patrick Baxter writes that the court's analysis is flawed, since, pursuant to 11 U.S.C. §363(l), all sales under section 363 are subject to section 365.[19]  Michael St. Patrick Baxter*, Section 363 Sales Free and Clear of Interests: Why the Seventh Circuit erred in* Precision Industries v. Qualitech Steel, 59 Bus. Law 475, 477 (2004).  Thus, Baxter argues, all sales outside the ordinary course of business are subject to all the provisions of section 365, including section 365(h).  Section 363(l), however, may not be the all-encompassing modification that Baxter suggests.

All courts that have considered section 363(l) view this statute section as one of a series of Bankruptcy Code provisions, including 11 U.S.C. §§541(c) and 365(e), that either invalidate, or strictly limit the enforceability of, bankruptcy forfeiture provisions.  Thus, section 363(l) provides a trustee with specific statutory authority to sell property of the estate, including executory contracts and unexpired leases, notwithstanding bankruptcy forfeiture provisions that would have otherwise rendered those agreements unenforceable, or terminated, upon the filing of the bankruptcy case.  *See Forlini v. Ne. Sav., F.A.*, 200 B.R. 9 (D.R.I. 1996); *EBC I, Inc. v. Am.*

---

[19] 11 U.S.C. §363(l) provides –

> Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

*Online, Inc. (In re EBC I, Inc.)*, 356 B.R. 631 (Bankr. D. Del. 2006); *In re GP Express Airlines, Inc.,* 200 B.R. 222 (Bankr. D. Neb. 1996).

Nonetheless, resolution of this case does not run afoul of either interpretation of section 363(l). The Trustee's right to sell the Real Property free and clear of all interests must undisputedly recognize CPH's interests under the Billboard Lease, whether those rights were in suspense pending assumption or rejection, or had "ripened" due to rejection or assumption. If a non-debtor's possessory rights are paramount, the priority of those rights should not be impacted by whether those possessory rights have already vested by virtue of rejection or assumption prior to an attempt to sell the underlying fee. Had the Debtor or Trustee assumed the Billboard Lease prior to sale of the Real Property, the terms of the Billboard Lease would govern the landlord-tenant relationship. Similarly, had the Trustee rejected the Billboard Lease prior to the sale of the Real Property to South Motor, CPH's possessory interest in the leasehold would continue to be subject to the rights and obligations under the Billboard Lease, subject only to the modifications authorized by section 365(h), that is, the right of CPH to set off rental payments, not relevant in this case because the rent was prepaid in full, and elimination of any obligation MMH might have relating to appurtenances to the lease. Rejection doesn't terminate a lease; it merely suspends certain rights and obligations under the lease. *See In re Flagstaff Realty Assoc.*, 60 F.3d 1031 (3d Cir. 1995); *Chestnut Ridge Plaza Assoc. v. Fox Grocery Co. (In re Chestnut Ridge Plaza Assoc.)*, 156 B.R. 477 (Bankr. W.D. Pa. 1993). Thus, any sale pursuant to section 363(f) necessarily takes into account any rights of a non-debtor party to an unexpired lease pursuant to section 365(h), when those rights are applicable.

However, MMH's bankruptcy did not confer any greater legal rights on CPH under the Billboard Lease or applicable non-bankruptcy law. Section 365(h) preserves certain tenant

rights; it does not enhance them.  If South Motor had purchased the Real Property subject to the Billboard Lease without assuming the Billboard Lease, there is no law that suggests South Motor could never sell the Real Property free and clear of the Billboard Lease if applicable law or the Billboard Lease authorized such sale.  Moreover, if a subsequent owner of the Real Property, who had not assumed the Billboard Lease, filed bankruptcy, there is no law that would preclude that land owner from seeking relief under section 363(f) to the extent its provisions could be satisfied.  In such instance section 365 would not apply at all because the land owner would not be a party to the Billboard Lease, and the Billboard Lease would not be a lease of a debtor.[20]

There is nothing in section 365(h) that prohibits a debtor/landlord from selling property in which there is a tenant in possession, whether that tenant is in possession by virtue of a lease that has been assumed or by a lease that has been rejected. In fact, there is nothing in section 365(h) that addresses at all a debtor's sale of property subject to a lease. Indeed, although 11 U.S.C. §365(h)(1)(D) specifically states that "[i]n this paragraph, "lessee" includes any successor, assign, or mortgagee permitted under the terms of such lease" it does not similarly state that the term "lessor" includes any successor, assign or mortgagee of the debtor.  Had Congress intended the protections of section 365(h) to apply without limitation even when the property subject to the lease is sold, Congress could have made that clear. This omission, especially in light of section 365(h)(1)(D), is telling.  *See Nunnally v. Equifax Info. Serv., LLC,* 451 F.3d 768 (11th Cir. 2006). *Cf. Turoff v. Sheets (In re Sheets)*, 277 B.R. 298, 306 (Bankr. N.D. Tx 2002) (Cases holding that section 365 is debtor's exclusive remedy in connection with unexpired leases do not override a trustee's chapter five avoidance powers – "[I]f Congress had

---

[20] Of course, had the Trustee failed to recover title to the Real Property, CPH's rights, if enforceable against a bona fide purchaser, would have survived transfer to GAG or any subsequent owner; however, CPH's rights to possession would continue to be governed by the document pursuant to which its leasehold interest stems, that is, the Billboard Lease, and any applicable non-bankruptcy law.

intended any provision of §365 to trump the trustee's §544 powers, Congress could have so provided in the Code.").  Similarly, if Congress intended section 365(h) to trump a debtor's right to sell property, it could have expressly provided that limitation.

As noted by the Seventh Circuit in *Qualitech*, rules of statutory construction dictate that, to the extent possible, when two statutes can be read so that each shall be effective, courts must do so, and avoid finding conflict where it is merely apparent and not real.  327 F.3d at 544.  In this case, no conflict is presented; the two statutes can be read so that all provisions of each can be effective. Section 365 having been satisfied, it is now up to me to determine whether the Trustee could sell free and clear of the Billboard Lease under section 363(f).

## THE REAL PROPERTY COULD BE SOLD
## FREE AND CLEAR OF THE BILLBOARD LEASE

Section 363 authorizes a trustee to sell property of the estate free and clear of an interest only if one of the elements of section 363(f) can be met.  Section 363(f) allows a trustee to sell property free and clear of any non-debtor interest in such property, only if –

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

South Motor argues that the Real Property could be sold free and clear of the Billboard Lease because (1) applicable non-bankruptcy law permits the sale free and clear of the Billboard Lease, (2) the Billboard Lease is subject to a bona fide dispute, or (3) CPH could be compelled to accept a money satisfaction of its interest.

**Applicable non-bankruptcy law does not permit the sale free and clear**

South Motor contends the Real Property could be sold free and clear of the Billboard Lease because the Billboard Lease was not recorded. This argument is inconsistent with Florida law. While it is undisputed that the Billboard Lease is unrecorded, it is also undisputed that the RGA Deed specifically references the Billboard Lease.  Under Florida law, all subsequent purchasers of real property are deemed to have constructive notice of the existence and contents of any document filed in the record chain of title, and any facts they could have ascertained if they had made a reasonable inquiry regarding the record or its contents. *Sapp v. Warner*, 105 Fla. 245, 255, 141 So. 124, 127 (Fla. 1932), *aff'd,* 143 So. 648 (Fla. 1932); *Crown Gen. Stores v. Ultra Meat Mkt., Inc.*, 843 So.2d 287, 289 (Fla. 3d DCA 2003); *Fla. Masters Packing, Inc. v. Craig*, 739 So.2d 1288, 1291 (Fla. 4th DCA 1999).   In *Sapp v. Warner*, George Merrick, the creator of Coral Gables, purchased real property from a mother and from the guardian of the mother's minor child.  The sellers took back purchase money mortgages that were not recorded. The property was subsequently sub-divided and sold to third-party purchasers, or pledged to lenders.  The issue before the Florida Supreme Court was the enforceability of the unrecorded purchase money mortgages.  In this case of first impression, the court held the unrecorded mortgages had priority over the subsequent mortgages and deeds to third party purchasers. Because Merrick had received title to the property in question by a guardian's deed, the court held it was incumbent on any party receiving an interest from Merrick to review the underlying guardianship proceeding from which the guardian's authority emanated to confirm that the deed in fact had been authorized.  A review of the guardianship file would have made clear that the guardian and the child's mother were taking back purchase money mortgages and therefore the

parties claiming rights through Merrick had "implied actual knowledge" of the unrecorded mortgages even though the mortgages were not mentioned on the face of the deeds.

While the Florida Supreme Court held Merrick's successors had implied actual notice, the court referred to a case on constructive notice to explain and support its holding.  Quoting *Loomis v. Cobb*, 159 S.W. 305, 307 (Tex. Civ. App. 1913), the court wrote

> It is a familiar and thoroughly well settled principle of realty law that *a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise, upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title*.  The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.  Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success.

*Sapp v. Warner,* 141 So. at 129 (emphasis added*)*.  Further quoting *Loomis,* the court noted that the presumption of notice is rebuttable.

> Whenever, therefore a party has merely received information, or has knowledge of such facts sufficient to put him on an inquiry, and this constitutes the sole foundation for inferring a constructive notice, *he is allowed to rebut the prima facie presumption thence arising by evidence; and if he shows by convincing evidence that he did make the inquiry, and did prosecute it with all the care and diligence required of a reasonably prudent man, and that he failed to discover the existence of, or to obtain knowledge of, any conflicting claim, interest, or right, then the presumption of knowledge which had arisen against him will be completely overcome;* the information of facts and circumstances which he had received will not amount to a constructive notice.  What will amount to a due inquiry must largely depend upon the circumstances of each case.  If, on the other hand, he fail to make any inquiry or to prosecute one with due diligence to the end, the presumption remains operative, and the conclusion of a notice is absolute.

*Id.* (emphasis added).

Florida courts have consistently followed *Sapp*.  *Compare Crown Gen. Stores, Inc.*, 843 So.2d 287 (A purchaser of property had implied actual notice of an unrecorded lease because the

purchaser had read a document (and indeed altered the provision in question) that specifically mentioned the lease), *with Fla. Masters Packing, Inc.,* 739 So.2d 1288 (The court held there was nothing in the land records, or physically located on the land, to put the owners of the large tract on notice, or create in them a duty to investigate, that the legal description of a contiguous parcel encroached on their land, and denied the relief sought by the owner of the contiguous parcel for reformation and to quiet title.).

South Motor argues that the reference to the Billboard Lease in the RGA Deed in the public records was "several steps removed in the chain of title," that the Billboard Lease did not show up in the title search run by South Motor or the Trustee, and thus the mention of the Billboard Lease in the RGA Deed does not constitute notice. Notwithstanding that the Billboard Lease was specifically mentioned on the face of the RGA Deed, it is undisputed that a title commitment apparently ordered by South Motor,[21] [SM Exh. #4], did not list the Billboard Lease as a title exception. Thus, it is fair to assume that the person or persons examining title did not review the RGA Deed, in spite of the admonition of the Florida Supreme Court in *Sapp* to review any deed in the chain of title "until the whole series of title deeds are exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained." 141 So. at 129. Not only was the RGA Deed the deed that conveyed an interest in the Real Property to MMH, it was the only warranty deed in the chain of title leading to the interest the Trustee sought to convey. Under the criteria of *Sapp*, the express mention of the Billboard Lease in the RGA Deed would create actual, not implied actual or constructive, notice of the Billboard Lease. So the issue is

---

[21] There was one commitment introduced into evidence [CPH Exh. #L and SM Exh. #4], which was reissued as a revised version. [SM Exh. #13]. It appears the commitment was ordered by South Motor. There is no evidence that the Trustee ordered any title commitment. Indeed the Trustee's own testimony seems to indicate he relied solely on the Debtor's schedules in determining who might claim an interest in the Real Property. [CPH Exh. #EE, at 8:16-23]. Trustee's counsel testified at his deposition that he thinks he ordered a title search, but that any search would have been subsequent to the Debtor getting title from RGA. [SM Exh. #26, at 36:4-37:6].

whether, under Florida law, South Motor is insulated by the title commitment it received and would "under applicable law" be a bona fide purchaser under Fla. Stat. §695.01, which status, in turn, would confer on the Trustee the ability to sell the Real Property free and clear of the Billboard Lease by virtue of  section 363(f)(1).

South Motor argues that CPH provided no evidence "that a title examiner reviewing title in the context of a 'free and clear' bankruptcy sale should have reviewed a deed three steps back in the chain of title in order to determine if there were any unrecorded interests." [SM Written Closing Argument, pg. 26].   South Motor further suggests, without any support, that the kind of title commitment a purchaser gets when purchasing property pursuant to a section 363 sale doesn't require that any liens be listed since the sale will be free and clear of such liens.  First, I find such an argument specious – I have never heard of such an exception to the manner in which a title commitment is prepared and South Motor provided no testimony to contradict my understanding.  Second, the title commitment listed many other liens and encumbrances, which fact directly contradicts this questionable assertion.  Finally, according to *Sapp*, the specific mention of the Billboard Lease in the RGA Deed created a prima facie presumption of notice that South Motor had the burden to rebut.  Consequently, it was South Motor's burden to show it was not reasonable for someone reviewing title on a piece of real estate to review prior deeds. South Motor failed to meet that burden.  The RGA Deed is in the chain of title; it should have been reviewed.[22]

While a trustee's actual knowledge of an unrecorded interest does not defeat a trustee's ability to set aside such interest under 11 U.S.C. §544(a), the trustee's constructive notice of such

---

[22] Despite South Motor's assertion that the RGA Deed was remote in time, it was not; the RGA Deed was recorded only five years prior to the Trustee's sale of the Real Property.  Moreover, there is no temporal condition imposed on the *Sapp* requirements other than the thirty year period set forth in Chapter 712 of the Florida Statutes regarding marketable title, the provisions of which chapter no one has suggested could be applicable to the issues before me.

an interest does not insulate the trustee because, in such a case, the interest could not be defeated by a bona fide purchaser. *See Briggs v. Kent (In re Prof'l Inv. Props.),* 955 F.2d 623, 627 (9th Cir. 1992) ("A trustee does not become a hypothetical bona fide purchaser if she has been put on constructive or inquiry notice."). *See also In re Sheets*, 277 B.R. 298. South Motor's failure to rebut the presumption of constructive notice of the Billboard Lease through of the RGA Deed creates the same problem for rights otherwise flowing through the Trustee. Under applicable law, the Trustee and South Motor are each deemed to have constructive notice of the Billboard Lease, defeating their status as a bona fide purchaser under Fla. Stat. §695.01.[23] Accordingly, section 363(f)(1) does not provide a means by which the Trustee could convey the Real Property free and clear of the Billboard Lease.[24]

### The Billboard Lease is not subject of a Bona Fide Dispute

South Motor next argues that the Billboard Lease is subject of a bona fide dispute by virtue of CPH's failure to record the Billboard Lease. An interest is subject to a bona fide dispute if "there is an objective basis for either a factual or legal dispute as to the validity" of the interest. *In re Gulf States Steel, Inc.*, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002). The burden is on the trustee to show such a dispute exists. *Id.* Because, as outlined in the preceding section, Florida law recognizes the enforceability of the Billboard Lease by virtue of its mention in the

---

[23] The fact that South Motor cannot be a bona fide purchaser under Fla. Stat. §695.01 doesn't mean South Motor is not a good faith purchaser under 11 U.S.C. §363(m). Thus, South Motor's constructive or implied actual notice of the Billboard Lease would not necessarily defeat South Motor's status as a good faith purchaser.

[24] Based on the holding in *Sapp v. Warner*, it can be fairly argued that the Trustee and South Motor each had implied actual notice of the Billboard Lease because the billboard's presence on the Real Property created a duty to investigate. *Accord Harrell v. Lamar Co.,* 925 So.2d 870 (Miss. Ct. App. 2005). While the Trustee and South Motor might argue the title search satisfied the duty to investigate, as I already noted, South Motor failed to prove that title search met the standards of diligence required by Florida law. South Motor's duty to investigate based on the mere presence of the billboard is mitigated somewhat, but not entirely, by South Motor's reliance on the Sale Motion that averred all parties in interest were properly notified. The Trustee obviously felt compelled to investigate the ownership of the billboard, evidenced by the specific requests for documentation, and the deposition questions, relating to the billboard previously described in this opinion.

RGA Deed, the Billboard Lease is not the subject of a bona fide dispute solely because it is unrecorded.[25]

## CPH Could be Compelled to Accept a Money Satisfaction of its Interest

Finally, South Motor argues that CPH could be compelled to accept a money judgment in satisfaction of its interest by virtue of the following language in the Billboard Lease:

> Sale or Mortgage of the underlying Property.  In the event that Lessor wishes to sell the underlying Property, or to obtain a mortgage financing secured thereby, Lessee shall cooperate in executing all reasonable documentation facilitating the transaction so long as Lessees' [sic] right relative to the Billboard are recognized therein.  Lessee shall respond to such requests within five (5) business days. Documentation to be provided shall include, but not be limited to, estoppel letters, subordination agreements, and related documents.  In the event that a contemplated or financing transaction cannot proceed because of this Lease, Lessor shall have the right, starting in the 6th year, to "buy-out" or terminate this lease agreement upon a cash payment to Lessee in the sum of $60,000.00, together with interest accrued on this sum at the rate of eight percent to the date of the buyout.

[CPH Exh. #B, at ¶17].  CPH counters that the law is clear that the holder of a leasehold interest cannot be compelled to accept money in satisfaction of its leasehold interest, citing *In re Haskell,* 321 B.R. 1.

The phase "could be compelled" has been interpreted to mean that, on a hypothetical basis, a creditor could be required to accept money in satisfaction of its interest, not that the condition must actually have occurred.  *In re Lady H. Coal Co.*, 199 B.R. 595, 609 (S.D. W.Va. 1996) ("[I]t is a 'hypothetical' satisfaction under (f)(5), since the subsection uses 'could be' compelled and not 'must be' or 'shall be' compelled."). *See In re Gulf States Steel*, 285 B.R. 497; *WBQ P'ship v. Va. Dept. of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 106-107 (Bankr. E.D. Va. 1995) (Section 363(b)(5) can be satisfied if the interest could be reduced to a claim and the holder of the interest could be "compelled to accept a cash award in lieu of

---

[25] South Motor did not suggest any other reason why the Billboard Lease might be the subject of a bona fide dispute.

equitable relief." The holder of a right to recapture, which the debtor sought to eliminate, could be compelled to accept money in satisfaction of the right and was "therefore subject to a hypothetical money satisfaction."); *In re Healthco. Int'l, Inc.*, 174 B.R. 174 (Bankr. D. Mass. 1994).

In *In re Haskell*, 321 B.R. 1, the debtor argued the tenant's interest could be satisfied by the payment of money in a hypothetical condemnation proceeding and therefore section 363(f)(5) applied. Judge Feeney rejected what she called the "theoretical possibility proposed by the Debtor." *Id.* at 8. Citing as support several cases, including W*BQ Partnership* and *Healthco*, Judge Feeney held that section 363(f)(5) can only be interpreted to mean that "the trustee or the debtor be the party able to compel monetary satisfaction for the interest which is the subject of the sale." *Id.* In rejecting the applicability of section 363(f)(5) in the *Haskell* case, Judge Feeney held first, that the tenant's claim could not be quantified for purposes of section 363(f)(5), and second, that by virtue of section 365(h), the tenant could not be compelled under section 363(f)(5) to accept money for its rejected lease. To the extent that this second statement suggests, as claimed by CPH, that section 365(h) insulates a tenant from ever being subject to the payment of money in satisfaction of a leasehold interest, I disagree since such a broad approach would confer on certain tenants, including CPH, greater rights than they might actually have under their leases. As I stated above, the rejection of a lease in bankruptcy does not insulate a lessee from its terms other than as specifically provided in section 365(h) – that is, the right to continue to remain in possession and pay the rent under the lease according to its terms, subject to the setoff rights described in section 365(h). However, I do not believe that Judge Feeney intended this statement to be so broadly interpreted, since such an argument would be inconsistent with her statement that section 363(f)(5) could apply where the trustee or the debtor

could compel the tenant to accept money. Thus, where, as here, a tenant in a lease has agreed that the lease can be bought out under certain conditions, whether at a specific price or pursuant to a formula, that provision, like the rest of the lease, survives bankruptcy rejection and satisfies the requirement that the tenant could be compelled by the trustee to accept money in satisfaction of its interest even if the condition has not actually occurred.

The Billboard Lease contains an express, mutually agreed upon valuation of the leasehold interest; CPH has voluntarily acknowledged there are conditions under which it could be compelled to accept a money satisfaction of its leasehold interest. Thus, because CPH contractually agreed to monetize the value of its leasehold interest, section 365(f)(5) does apply. The Trustee could compel CPH to accept a money satisfaction of its leasehold interest and therefore the Real Property could have been sold free and clear of the Billboard Lease.[26]

Because the Trustee had the right to sell the Real Property pursuant to section 363(f)(5), CPH would have had the right under 11 U.S.C. §363(e) to seek adequate protection of its leasehold interest. Obviously, due to the lack of notice, CPH did not have the opportunity to request adequate protection; had CPH sought adequate protection it would have been entitled to have the value of its interest paid from the sale proceeds. 11 U.S.C. §§363(e) and 361. Accordingly, CPH is entitled to be paid the $60,000, plus interest,[27] to which it is entitled on account of its leasehold interest.[28]

---

[26] South Motor also argues CPH could be compelled to accept money in satisfaction of its interest in connection with a hypothetical condemnation proceeding, the argument rejected by Judge Feeney in *Haskell*. Having determined that CPH has a contractual agreement to accept money in satisfaction of its interest, I don't need to determine whether section 363(f)(5) could be extended to encompass a purely hypothetical condemnation proceeding involving rights not excercisable by a debtor or trustee.

[27] The source of the payment and amount of interest due shall be determined at a later hearing.

[28] Rex Hodges of CPH testified that the billboard is very valuable, and it would be difficult to estimate the loss that CPH would suffer if the Billboard Lease was terminated. [CPH Exh. #1, at ¶15]. However, this testimony is completely irrelevant. Whatever value CPH believed the Billboard Lease to have, CPH agreed to accept a sum certain if the lease were terminated. Had CPH wished to negotiate a termination fee based on a formula or the value of the Billboard Lease at the time of termination, it could have done so.

Adv. No. 07-01574-LMI

## CONCLUSION

Doing things right the first time avoids the time and expense of cleaning up unnecessary messes. Had CPH recorded the Billboard Lease, had the Trustee notified CPH of the sale of the Real Property, had South Motor asked the Trustee about the billboard, or had the person or persons reviewing title looked at the RGA Deed, this litigation could have been avoided.  While I recognize that speed is essential to the success of most bankruptcy cases, and the finality of bankruptcy sales is important to the bankruptcy process, expediency does not trump due process. In the instant case CPH did not receive the notice to which it was entitled when the Trustee sought to compromise its rights.  Equity dictates that those rights be recognized but balanced against the rights of other parties who are impacted.  Having reviewed all the facts and circumstances, I find equity requires that CPH receive the treatment to which CPH would have been entitled had it received notice of the sale, that is, the payment of the agreed upon value of its leasehold interest.

# # #

Copies furnished to:
John Hutton, Esq.

*Attorney Hutton shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*